RECEIVED IN THE PRO SE OFFICE
JAN 06, 2025, 1:58PM
VIA PRO SE ONLINE PORTAL

*Rec. in p drive 1/8/25 rg

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
)
)
ETAN LEIBOVITZ, )
        Plaintiff, )
)
    v. )
)
)
NEW YORK ASSISTANT ATTORNEY GENERAL NICOLE )   Case No.: 2024 CV 4779
PROCIDA; NEW YORK STATE COURT OFFICERS )         (AMD)(LB)
MICHAEL ZEBRO and KENNETH COY;  NEW YORK SRT )
COURT OFFICERS JOHN DOES 1-10; QUEENS ASSISTANT)
DISTRICT ATTORNEYS PHYLLIS WEISS; NEW YORK )
STATE COURT JUDGE JOHN KATSANOS. )
)
        Defendants )
)
-------------------------------------------------------------------------------X


**PLAINTIFF ETAN LEIBOVITZ'S RESPONSE IN OPPOSITION TO THE STATE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)**

Plaintiff, Etan Leibovitz, respectfully submits this Response in Opposition to the State Defendants[1] Motion to Dismiss the Verified Complaint, filed on July 9th, 2024 (ECF No. 1), by Plaintiff Etan Leibovitz, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) ("Motion"). (ECF No. 23-27).

## PRELIMINARY STATEMENT

What really happened to Plaintiff Etan Leibovitz on November 15th, 2022 from 9:15 AM until 8:04 PM? Plaintiff Etan Leibovitz endured a series of events that have been misrepresented and obscured by every State Defendant. On November 15th, 2022, Plaintiff Etan Leibovitz fortuitously had his recording application, which is usually carried on his person, stored in his computer bag. This stroke of luck resulted in the recording application capturing critical events that led to his false arrest, providing invaluable evidence that sheds light on the misconduct of Defendants John Katsanos, Michael Zebro and Kenneth Coy. Defendant John Katsanos' falsified witness statement, combined with the following discussion between NYPD Officer Babolal and Defendants Kenneth Coy and Michael Zebro, reveals glaring inconsistencies and undermines the credibility of the narrative presented. These discrepancies create significant doubt, leaving too many holes for even Michael Berg to successfully deceive this Court.

> At 1:33 pm
>
> **NYPD Officer Babolal:** Now physical force
> **Defendant Michael Zebro:** Did we use?
> **NYPD Officer Babolal:** Nah he didn't use any physical force on the Judge, right? He just said I am...
> **Defendant Michael Zebro:** No he threw...he threw uhhh ... something out of his hand.
> **NYPD Officer Babolal:** But did it hit the person?
> **Defendant Michael Zebro:** Did the thing he threw hit the Judge? (Pause)it might have!!
> **NYPD Officer Babolal:** Nah-it's either he did or didn't.
> **Defendant Michael Zebro:** I didn't watch it because once.
> **NYPD Officer Babolal:** Find out we need to know these things.
> **Defendant Michael Zebro:** He threw something at his back I don't know if he

---

[1] State Defendants are Assistant Attorney General Nicole Procida, former Court Officer Michael Zebro, Court Officer Kenneth Coy, and Judge John C.V. Katsanos.

>   -1 would just say no.
>   **NYPD Officer Babolal:** Don't, Don't criminalize yourself- but don't lie, pejurize (sic) yourself- It's not a big deal because you know doesn't look like this guy is injured.
>   **Defendant Michael Zebro:** Nah.
>   **Defendant Micahel Zebro:** Was Katsanos hit by the thing he threw?
>   **Defendant Kenneth Cov:** No-
>   **Defendant Michael Zebro:** No?
>   **Defendant Kenneth Cov:** It was a CD it wasn't going to reach him.
>   **Defendant Michael Zebro:** Physical force or weapon no?
>   **Defendant Kenneth Cov:** No.

In the present action, New York Assistant Attorney General Michael Berg is attempting to deceive this Court by invoking the doctrine of res judicata as grounds for dismissing Plaintiff Etan Leibovitz's Verified Complaint. However, in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944): The Court vacated a judgment due to fraud on the court, emphasizing the importance of judicial integrity over finality of judgments. In Gonzalez v. Crosby, 545 U.S. 524 (2005): The Supreme Court affirmed that FRCP 60(b) can be used to challenge a judgment procured through fraud on the court, even if it conflicts with res judicata principles. In Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072 (2d Cir. 1972): The Second Circuit held that a judgment obtained through fraud on the court is not entitled to res judicata protection. Despite being granted an extension to August 30th, 2024 (ECF #13, #15), to file his response, Michael Berg had over 30 days to consult with his client, Defendant John Katsanos, regarding the existence of two For the Record audio recordings instead of one. In Michael Berg's Declaration (ECF #24), he testifies that

>   **"I am familiar with the facts and circumstances set forth herein, based on my review of the filings in this action and in other court proceedings involving Plaintiff Etan Leibovitz ("Plaintiff"), documents and audio recordings provided by the New York State Office of Court Administration ("OCA"), and communications with Plaintiff."**

Here, Michael Berg failed to disclose in his August 30th, 2024, declaration the identity or identities of the individual(s) within the New York State Office of Court Administration who provided him with the two (2) FTR audio recordings. Furthermore, Michael Berg did not clarify whether he communicated with his clients, Defendants John Katsanos, Michael Zebro, and Kenneth Coy, regarding this matter, or if his communication was limited solely to Plaintiff Etan Leibovitz. Significantly, Michael Berg was not present in Queens County Civil Court on November 15th,

2022, and his declaration does not indicate that he spoke with or obtained confirmation from his clients, Defendants John Katsanos, Michael Zebro, and Kenneth Coy regarding the accuracy of the two (2) FTR audio recordings provided to him by the New York State Office of Court Administration. The reality is that Michael Berg deliberately avoided addressing the discrepancy surrounding the existence of two FTR audio recordings. He cannot incorporate any testimony or evidence regarding this issue because doing so would directly incriminate atleast two of his four clients—Defendants John Katsanos and Kenneth Coy in crimes of perjury.

Plaintiff Etan Leibovitz submits this opposition recognizing that time constraints precluded him from addressing every point raised in Michael Berg's Motion to Dismiss (ECF #23-27), especially addressing Judge Javier Vargas's Decision and Order (ECF #24-5). The lack of a response does not constitute an admission. As this Court is aware, Plaintiff Etan Leibovitz served Michael Berg with a motion for sanctions on December 22nd, 2024. Subsequently, Plaintiff filed a motion to stay the briefing schedule until the motion for sanctions is decided. The relief sought in the sanctions motion includes striking Michael Berg's motion pursuant to FRCP 11(c)(2). The Advisory Committee Notes to the 1993 amendments to Rule 11 elaborate on the court's authority to impose a range of sanctions, such as: Striking the offending paper.

The two (2) For the Record audio recordings submitted by Michael Berg don't support Judge Javier Vargas' Decision and Order (ECF 24-5). On page 2, bottom paragraph, Judge Javier Vargas writes:

> "Several court appearances ensued in 2022, wherein claimant would always abruptly ask the presiding judge at the time, Civil Court Judge John Katsanos, whether "he read the complete docket and if he had sufficient amount of time to familiarize himself with [c]laimant's pending lawsuit before presiding over the hearing (id at7; ¶¶ 34, 35)".

Notably, when Judge Javier Vargas rendered his decision on December 13th, 2023, the For the Record audio recordings file(s) were not before him nor was Plaintiff Etan Leibovitz's November 15th, 2022 audio file, raising questions about how he concluded that "claimant would always abruptly ask Judge John Katsanos, whether "he read the complete docket…". Next, on page four, paragraph two of his Decision and Order, Judge Javier Vargas writes:

> "According to conversations claimant allegedly heard between the Court Officers and Police Officers while he was confined at Queens County Criminal Court."

Michael Berg submitted Plaintiff Etan Leibovitz's claim as Exhibit 3 (ECF 24-3). Nowhere in Plaintiff Leibovitz's claim does he allege that he overheard or heard any discussions between the Court Officers and Police Officers. In fact, Plaintiff Etan Leibovitz specifically states that he was in the holding cell (ECF 24-3 ¶ 100) and that the discussions occurred at the 102nd Precinct inside an office, not the Queens County Criminal Court. In addition, in Plaintiff Etan Leibovitz's affidavit in opposition (averment # 41) to Defendant Nicole Procida's Motion to Dismiss Claim # 139463, Plaintiff Etan Leibovitz testifies to the following:

> "The question one has to ask themselves now is: If I am in a holding cell, from approximately 12:45 pm up until 8 pm, on November 15th, 2022 (See Verified Claim Averment #100), then how can I possibly testify in my Verified Claim the following averments # 101- # 116 with such accuracy and precision?? We already know that the office of the New York State Attorney General hasn't conducted any such investigation, so I ask this Court am I committing perjury? See Docket Index 12 pages 1-2."

On page 5, paragraph 1 of his Decision and Order, Judge Javier Vargas writes:

> "It seems that Judge Katsanos declined to testify and pursue the charges against claimant."

However, nowhere in the record is there any indication that Defendant John Katsanos declined to testify or pursue the charges against Plaintiff Etan Leibovitz.

### ARGUMENT

I. **THE 11th AMENDMENT DOES BAR PLAINTIFF ETAN LEIBVOITZ'S OFFICIAL-CAPACITY CLAIMS**

Plaintiff Etan Leibovitz concedes that the 11th Amendment does bar his official capacity claims against Defendants John Katsanos, Michael Zebro and Kenneth Coy. On July 31st, 2024, at 9:41 AM, Plaintiff Etan Leibovitz returned Michael Berg's missed call from earlier that morning. Initially, Plaintiff Etan Leibovitz attempted to call Michael Berg's office number at (212) 416-

8651 from his cell phone; however, the call did not go through because Michael Berg's office still had Plaintiff Etan Leibovitz's cell number blocked. (See ECF #1 First and Second Claim for Relief averments 315-325). Subsequently, Plaintiff Etan Leibovitz placed another call to Michael Berg, which went through successfully due to his use of the *67 feature to overcome the obstruction from Michael Berg's office, dialing *67-212-416-8651. (The *67 feature is a telephone service function that allows callers to block their phone number from being displayed on the recipient's Caller ID. When *67 is dialed before a phone number, it temporarily disables the Caller ID information for that specific call, showing "Private," "Blocked," or "Unknown" instead of the caller's actual number. ) The phone conversation lasted over 38 minutes and was recorded. The phone call between Plaintiff Etan Leibovitz and Michael Berg covered several topics regarding the litigation and the procedural and ethical conflicts in the case. The first topic discussed was the phone blocking issue. Plaintiff Etan Leibovitz began the call by first addressing that his cell number was still blocked by the New York Attorney General's office. Michael Berg claimed he was working on resolving the issue and acknowledged the importance of open communication, given Plaintiff Etan Leibovitz's status as a pro se litigant, stating in part:

> "My understanding, my understanding is that that is going to be resolved, because I want to be, I want you to be able to call me about this case. So I spoke with somebody yesterday, and I will follow-up on that. I can't speak for the rest of the office or what happened, during the litigation to the court of claims. But at least as far as you calling this number, my desk number, I'm, I'm working on resolving that so you can get through to me directly because you should be able to you are pro se, representing yourself in this new litigation, and I'm assigned to the defense of it. So we should be able to talk."

During the call, a few minutes later, Michael Berg appears to have a lapse in consistency and is caught in a lie.

> **Michael Berg:** … I I have to clarify one thing though. I think misspoke earlier. Umm, when I told you that I was working to have your calls to my line unblocked. I misspoke I actually dont believe that your calls to my phone line are anyway blocked or rerouted or …

On August 7th, 2024, the New York Attorney General's Office finally lifted the block on Plaintiff Etan Leibovitz's cellphone. For the first time in an extended period, Plaintiff Etan Leibovitz was able to place a call to the New York Attorney General's Office without needing to use the *67 function to mask his number. However, this unrestricted access was short-lived. On November 7th, 2024, at 11:44 AM, Plaintiff Etan Leibovitz discovered that his phone calls to the New York Attorney General's Office were being redirected to Michael Berg. Following this discovery, Plaintiff Etan Leibovitz sent an email to Michael Berg titled "Calls to the New York Attorney General's Office any number" seeking clarification. The email reads:

> Mr. Berg,
>
> Could you explain why any phone call I make to numbers associated with the office referenced above is redirected to you? If I use the *67 feature, the calls go through without issue.
>
> Best regards,
> Mr. Leibovitz

This pattern of call redirection raises serious concerns about the New York Attorney General's Office's handling of Plaintiff's communications and the transparency of their processes.

## II. EVIDENCE OF FRAUD ON THE COURT DOESN'T PRECLUDE A PARTY FROM BRINGING A SUBSEQUENT ACTION

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) is a landmark case decided by the Supreme Court of the United States concerning fraud on the court and the limits of the judicial system's tolerance for misconduct in litigation. Hartford-Empire Co. brought a patent infringement suit against Hazel-Atlas Glass Co. related to glass-making machinery. Hartford-Empire fraudulently induced the patent to be upheld by introducing evidence that included a fabricated article. This article, purportedly written by a disinterested expert, praised the patented invention. In reality, the article was secretly drafted by Hartford's attorneys and falsely attributed to the expert. Based on this and other evidence, the patent was upheld, and Hazel-Atlas was ordered to pay significant damages. Years later, Hazel-Atlas discovered the fraud and sought to overturn the judgment on the basis that it was procured through deceit. The Supreme Court, in a 5-4

decision, reversed the lower courts and ruled in favor of Hazel-Atlas, vacating the judgment based on fraud. The Court held that the fraud committed in this case went beyond just misleading a party; it struck at the integrity of the judicial process itself. Such fraud is intolerable because it undermines public confidence in the judiciary. The Court emphasized its inherent equitable power to correct judgments obtained by fraud, even after those judgments have become final. The principle of finality in judgments is important but does not protect judgments obtained through deliberate deception. The case remains a vital precedent in discussions of fraud on the court and the balance between judicial integrity and the finality of decisions. It is often cited in modern litigation involving allegations of fraudulent or unethical behavior affecting the judicial process.

On December 13th, 2023, Defendant Nicole Procida, serving as the Claims Bureau Torts Section Chief at the New York State Attorney General's Office, was successful in committing fraud against the New York Court of Claims by filing her affirmation in support of the State's motion to dismiss (ECF #24-4). This fraud culminated in Judge Javier E. Vargas rendering a decision and order dismissing Plaintiff Etan Leibovitz's Verified Claim #139463 (ECF # 24-5). Defendant Nicole Procida was assigned to defend the State of New York in this matter on or about August 7th, 2023, following Plaintiff's filing of Verified Claim #139463 (ECF # 24-3) on July 11th, 2023. During the course of the litigation, Defendant Nicole Procida engaged in intentional deceit, resulting in an adverse decision against Plaintiff Etan Leibovitz on December 18th, 2023, when Judge Javier E. Vargas's December 13th, 2023, decision was officially entered. Defendant Nicole Procida deliberately failed to disclose the following critical facts to the New York State Court of Claims:

1. Her office did not investigate Plaintiff Etan Leibovitz's November 15th, 2022, false arrest or his Notice of Intention to File a Claim; (**See** Exhibit O Etan Leibovitz's Opposition to Defendant the State of NY's Motion to Dismiss, Exhibit B)
2. Defendant John Katsanos lied in his witness statement, particularly regarding the events surrounding the existence of two For the Record audio recordings instead of one;
3. Defendant Kenneth Coy committed perjury when he executed the criminal complaint by falsely testifying that he observed Plaintiff Etan Leibovitz throw a compact disc at and in the direction of the complaining witness, Defendant John Katsanos;
4. Defendant John Katsanos committed perjury in his December 2nd, 2022, supporting deposition when he falsely testified that Plaintiff Etan Leibovitz threw a compact disc at and in his direction;

5. Defendant Nicole Procida failed to secure testimony from Defendant John Katsanos to explain why there are two For the Record Audio Recordings as opposed to one;
6. Defendant Nicole Procida failed to submit as exhibits, the two For the Record audio recordings, as part of her motion to dismiss;
7. The existence of two For the Record audio recordings instead of one, would have revealed:

    - A fabricated account in the two versions of the Queens County District Attorney Intake Bureau Crime Report, including its Summary of Crime section;
    - A false narrative in the NYPD Court Verification/Arraignment Card, misrepresenting what occurred in Courtroom 302 on November 15th, 2022.

8. When filing her affirmation in support of the motion to dismiss, Defendant Procida selectively quoted Defendant John Katsanos' falsified witness statement, deliberately omitting key language to mislead the New York State Court of Claims. Notably, the first half of Defendant Katsanos' witness statement is demonstrably false. The claim, "I did not turn the FTR back on," is untrue, as evidenced by:

    - Etan Leibovitz's November 15th, 2022 Audio File (See Exhibit D), and
    - The existence of the two For the Record audio recordings (ECF #24-1 and ECF #24-2).

    Both sets of audio files clearly captures Defendant John Katsanos turning the system back on and stating, "The Court is back on the record." The subsequent phrase, "because I got distracted by plaintiff on his return," is logically negated by the falsehood in the preceding clause. If the For the Record was, in fact, turned back on, then the stated distraction could not have occurred in the manner described. By knowingly presenting only selective portions of this falsified witness statement, Defendant Nicole Procida misled the court and bolstered a narrative unsupported by evidence. Her actions constitute intentional deceit that undermines the integrity of the judicial process.

Defendant Nicole Procida's deliberate concealment of these critical facts and her deceptive actions undermined the integrity of the judicial process, resulting in a fraudulent dismissal of Plaintiff Etan Leibovitz's Verified Claim. Additionally, Defendant Nicole Procida's office blocked Plaintiff Etan Leibovitz's cell phone number, infringing on his First Amendment right to document and file grievances. Defendant Nicole Procida's actions constitute a violation of Judiciary Law § 487, which prohibits attorneys from making false statements during litigation. Her deceit rises to the level of intentional misconduct, entitling Plaintiff Etan Leibovitz to treble damages as permitted under the law.

III. **DEFENDANTS JOHN KATSANOS, KENNTH COY AND MICHAEL ZEBRO ARE NOT ENTITLED TO ABSOLUTE IMMUNITY**

A. Defendant John Katsanos, as the complaining witness, doesn't have absolute immunity

On December 2nd, 2022, Defendant John Katsanos provided sworn testimony by executing his signature on a supporting deposition (**See** Exhibit N Defendant John Katsanos' Supporting Deposition), in the case titled the People of the State of New York against Etan Leibovitz, docket number CR-028558-22QN. Under oath, Defendant Katsanos attested to the following:

> I, **JOHN KATSANOS,** DEPOSE AND SAY THAT I HAVE READ THE ACCUSATORY INSTRUMENT IN THE ABOVE-ENTITLED ACTION AND THAT THE FACTS THEREIN STATED TO BE ON INFORMATION FURNISHED BY ME ARE TRUE UPON MY PERSONAL KNOWLEDGE.

Defendant John Katsanos, acting as the complaining witness in People of the State of New York vs. Etan Leibovitz (Docket Number: CR-028558-22QN), does not have absolute immunity in this matter. Unlike judges and certain other public officials who are afforded absolute immunity for acts performed within their judicial or quasi-judicial roles, a complaining witness operates in a fundamentally different capacity. As a complaining witness, Defendant John Katsanos' actions and sworn statements are subject to scrutiny and potential liability, particularly if they involve misconduct such as knowingly providing false testimony, fabricating evidence, or engaging in malicious prosecution. The doctrine of absolute immunity does not extend to individuals who voluntarily initiate criminal proceedings, even when their testimony is under oath in a supporting deposition. In Kalina v. Fletcher, 522 U.S. 118 (1997), the Supreme Court held that individuals acting as complaining witnesses, even in a legal proceeding, are not shielded by absolute immunity for their actions or statements outside their prosecutorial or judicial roles.

A prosecutor, Kalina, filed a criminal complaint, an information, and a "Certification for Determination of Probable Cause" to support the issuance of an arrest warrant for Fletcher. The certification contained factual statements about the

case, which Kalina personally signed under oath. Fletcher was later arrested but claimed the certification included false statements, leading to his wrongful arrest and prosecution. Fletcher sued Kalina under 42 U.S.C. § 1983 for violating his constitutional rights.

Issue:

Does absolute immunity protect a prosecutor from liability for personally attesting to the truth of facts in a sworn statement submitted to the court?

Holding:

The Supreme Court held that prosecutors are not entitled to absolute immunity when acting as witnesses or performing functions that are not intimately associated with the judicial phase of the criminal process. Specifically, Kalina was not immune for her actions in personally attesting to the truth of the certification's contents.  Prosecutors are afforded absolute immunity for activities "intimately associated with the judicial phase of the criminal process," such as initiating prosecutions and presenting cases. However, when a prosecutor steps into the role of a witness (e.g., by personally attesting to facts in an affidavit), they are performing an administrative or investigative function and are only entitled to qualified immunity, not absolute immunity. By swearing to the truth of the certification, Kalina was acting as a witness rather than as a prosecutor. The Court distinguished between the act of preparing and presenting a case (protected by absolute immunity) and the act of providing sworn factual testimony (not protected).  This case drew a clear line between prosecutorial functions that warrant absolute immunity and administrative or investigative functions where only qualified immunity applies.  It underscores that individuals, including prosecutors, acting as complaining witnesses are not shielded from liability for their statements.  "Testifying about facts is the function of the witness, not of the lawyer."  "Only qualified immunity is available when a prosecutor personally vouches for the truth of a sworn statement."

A. Defendants Kenneth Coy and Michael Zebro Do Not Have Absolute Quasi-Judicial Immunity

**LEGAL ANALYSIS**

  a. Legal Standard

Under New York law, Criminal Procedure Law §§ 140.10(1)(a), 1.20(39), a peace officer may arrest a person for: (a) any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence. The term "reasonable cause" has been "equated with probable cause' as that term is used in the Fourth Amendment" of the United States Constitution (People v Lombardi, 18 AD2d 177, 180, 239 N.Y.S.2d 161, affd 13 NY2d 1014, 195 N.E.2d 306, 245 N.Y.S.2d 595 [1963]. Court officers are peace officers who are required to wear uniforms and carry firearms.[2] They are charged with providing law enforcement, security services and maintaining order within court facilities statewide.[3] Court officers also execute bench warrants and make arrests.[4] Court officers are entitled to qualified immunity if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." See Washpon v. Parr, 561 F. Supp. 2d 394, 403-404 (S.D.N.Y. 2008) (citations omitted). The qualified immunity doctrine shields government officials exercising their discretion "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Huminski v. Corsones, 396 F.3d 53, 80 (2d Cir. 2004).

 In DePaula v. State of New York, 2011 NY Slip Op 01793 [82 AD3d 827], on the morning of September 30th, 2005, in a courtroom at the Queens County Civil Court, Joseph DePaula ("Mr. DePaula") an attorney, was arrested and detained by Court Officer Rey. Mr. DePaula was arrested after he called Court Officer Rey a derogatory name in a crowded courtroom. The Court of Appeals has specifically held that the use of obscene language, directed at a Court Officer in a busy courtroom, is not a violation of Penal Law § 240.20[3], absent "the essential element of either intent or recklessness" (People v Tarka, 75 NY2d 996, 997, 556 N.E.2d 1073, 557 N.Y.S.2d 266 [1990]). Mr. DePaula eventually filed a claim against the State of New York, in the Court of Claims, to hold the defendant liable for false arrest and malicious prosecution. In light of the fact that the claimant was confined for no more than 15 to 20 minutes following his arrest, and that he

---

[2] https://ww2.nycourts.gov/job-overview-cot-8691#:~:text=Court%20officers%20are%20peace%20officers,order%20within%20court%20facilities%20statewide.
[3] https://ww2.nycourts.gov/job-overview-cot 8691#:~:text=Court%20officers%20are%20peace%20officers,order%20within%20court%20faci lities%20statewide
[4] https://ww2.nycourts.gov/job-overview-cot 8691#:~:text=Court%20officers%20are%20peace%20officers,order%20within%20court%20faci lities%20statewide

failed to establish that he suffered any other injury during the period between his arrest and arraignment, the amount of damages awarded by the trial court for false arrest was not inadequate (see Jian Ren Chen v City of New York, 64 AD3d 542 [2009]; Gutierrez v City of New York, 288 AD2d 86 [2001])

The interaction between Plaintiff Etan Leibovitz and Defendant Kenneth Coy on November 15th, 2022 just before entering Courtroom 302 (ECF #1, Averments 142-143 and Etan Leibovitz's Declaration Averments 87-88), demonstrates that Defendant Kenneth Coy was fully aware of the events of October 21st, 2022, and provides evidence that Plaintiff Etan Leibovitz was making a concerted effort to engage Defendant Kenneth Coy in a discussion about the Decision and Order from Defendant John Katsanos on October 21st, 2022 vacating the contempt of court ruling. This conversation underscores both Defendant Kenneth Coy's awareness of his responsibilities and Plaintiff Etan Leibovitz's good-faith attempt to ensure the due process concerns were addressed. When Plaintiff Etan Leibovitz directly asks Defendant Kenneth Coy if he was present on October 21st, Defendant Kenneth Coy does not outright deny his presence but instead responds ambiguously, stating, "I usually work with [Judge Katsanos] so most likely yes." This response indicates that Defendant Kenneth Coy is aware of the context but is reluctant to confirm his specific role or actions. Defendant Kenneth Coy's evasion when asked to recall details suggests an awareness of the events but an unwillingness to engage in further discussion, possibly to avoid accountability.  Plaintiff Etan Leibovitz's retrieval of Defendant John Katsanos' October 21st, 2022, Decision and Order and his attempt to have Defendant Kenneth Coy review it clearly demonstrate his intent to foster a meaningful discussion. This act shows Plaintiff Etan Leibovitz's proactive approach in bringing the court's ruling to Defendant Kenneth Coy's attention.  Plaintiff Etan Leibovitz's repeated references to due process violations and his direct request for Defendant Kenneth Coy to read the decision highlight his focus on ensuring that the legal principles of fairness and justice are upheld.  Defendant Kenneth Coy's refusal to read the Decision and Order—citing the lack of glasses—is a dismissive tactic rather than a genuine inability to engage. This refusal undermines the principles of accountability and professional duty, especially given the serious nature of the allegations involving due process violations.   Defendant Kenneth Coy acknowledges that Plaintiff Etan Leibovitz had previously informed him of due process violations, stating, "I don't usually get orders from the public, but go ahead, I am listening to you." This admission confirms Defendant Kenneth Coy's awareness of the issue, yet he fails to act or provide

any substantive response.  Throughout the dialogue, Plaintiff Etan Leibovitz consistently refers to violations of his 5th Amendment rights and the applicability of 42 U.S.C. § 1983. These references demonstrate Plaintiff Etan Leibovitz's understanding of the legal framework and his efforts to seek redress. Plaintiff Etan Leibovitz's frustration with Defendant Kenneth Coy's inaction is evident when he highlights the disparity in treatment, asserting that Defendant Kenneth Coy would have acted differently if the situation involved a member of the general public. This argument further underscores the importance of equitable enforcement of the law.  Defendant Kenneth Coy repeatedly attempts to shift responsibility by mentioning a supervisor, despite Plaintiff Etan Leibovitz's clear assertion that the issue pertains to Defendant Kenneth Coy's own actions and decisions. This deflection suggests a reluctance to confront the implications of his previous inaction.  Defendant Kenneth Coy's vague and noncommittal responses ("What you could do...") further reflect an attempt to avoid addressing the substance of Plaintiff Etan Leibovitz's claims.

Later on the same day, at 12:59 PM, during a recorded discussion, Defendant Kenneth Coy makes a revealing statement that suggests dishonesty about his knowledge of the incident. This is captured in Etan Leibovitz's November 15th, 2022 Audio File, Exhibit D, and timestamped at 3:44:25 - 3:45:30. The exchange proceeds as follows

> **NYPD Officer Babolal:** We are going to start the paperwork? Charge - What you charge with?
> **Defendants Michael and Zebro and Kenneth Coy:** We haven't charged him with anything.
>                    (Discussion)
> **NYPD Officer Babolal:** At the judge? .... His First Amendment rights man.
> **Defendant Michael Zebro:** Can't be throwing shit at the judge man.
> **NYPD Officer Babolal:** Let's see what they do with this case ....to the judge - Keep walking Keep Walking.
> **Defendant Michael Zebro:** You are with us?
> **NYPD Officer Babolal:** Us...This is going to be the longest he stays in custody.
> **Defendant Michael Zebro:** Yeah.
> **NYPD Officer Babolal:** So what could have pissed him off so much?
> **Defendant Michael Zebro:** I have no idea!!
> **Defendant Kenneth Coy:** I have no idea!!

The statements, particularly "I have no idea!" from Defendants Michael Zebro and Kenneth Coy, contradict their earlier narrative and actions, including their assertions of Plaintiff throwing an

object. Their feigned ignorance during this conversation undermines the credibility of their claims and highlights a coordinated attempt to fabricate charges against Plaintiff Etan Leibovitz.

Defendant Kenneth Coy was fully aware that Plaintiff Etan Leibovitz was notifying Defendant John Katsanos that fraud was being committed against him. Plaintiff Etan Leibovitz sought to provide further proof by offering Defendant John Katsanos a CD, which Defendant Kenneth Coy declined to accept (ECF #1, Averments 156, 157, and Etan Leibovitz Declaration, Averments 99, 100). The CD contained two audio files (See Exhibits A and B) of recorded conversations with Aaron Reichel from a recorded line on October 24th, 2022. In these recordings, Aaron Reichel admitted that the algorithm conceived by Plaintiff Etan Leibovitz had indeed generated profits. Defendants John Katsanos and Kenneth Coy's refusal to accept this critical evidence demonstrates an intentional effort to obstruct justice and prevent Plaintiff Etan Leibovitz from substantiating his claims of fraud, as well as ensuring that Defendant John Katsanos had access to all relevant facts. Additionally, Defendant Kenneth Coy was aware that Defendant John Katsanos stated on the record, "We did - we had a fraud on the Court hearing." However, nothing precludes a litigant from presenting new, direct evidence to the Court. Despite this awareness and the evidence offered by Plaintiff Etan Leibovitz, Defendant Kenneth Coy had no reasonable cause to believe that Plaintiff Etan Leibovitz committed any offense in his presence. Only when Plaintiff Etan Leibovitz dropped the CD in the well of the courtroom did Defendant Kenneth Coy move forward to effectuate Plaintiff Etan Leibovitz's arrest. At that point, Defendants John Katsanos, Michael Zebro and Kenneth Coy fabricated a narrative that Plaintiff Etan Leibovitz had stepped out of the courtroom only to return and throw the CD at Defendant John Katsanos. This heightened and false depiction of events, which never occurred, was manufactured to justify an unlawful arrest and obscure the truth. At 1:33 PM on the day in question, NYPD Officer Babolal cautioned Defendants Kenneth Coy and Michael Zebro, stating:

> **NYPD Officer Babolal:** "Don't, don't criminalize yourself—but don't lie, perjure (sic) yourself—It's not a big deal because, you know, it doesn't look like this guy is injured."

This statement demonstrates that even NYPD Officer Babolal recognized the risk of fabricating events and warned against making false statements, further undermining the credibility of the fabricated narrative used to justify Plaintiff Etan Leibovitz's arrest.

### IV. PLAINITFF ETAN LEIBOVITZ'S COMPLAINT DOESN'T FAIL TO STATE A CLAIM

#### A. No Existence of Probable Cause

The claim that there was probable cause to arrest Plaintiff Etan Leibovitz for disorderly conduct on November 15th, 2022, fails because the second element of the offense under N.Y. Penal Law § 240.20 cannot be satisfied. To establish probable cause for disorderly conduct, the prosecution must demonstrate three elements:

- The defendant's conduct must be public in nature;
- The defendant must act with intent to cause public inconvenience, annoyance, or alarm, or with recklessness as to the risk thereof; and
- The defendant's conduct must match one of the enumerated acts in the statute.

Provost v. City of Newburgh, 262 F.3d 146, 157 (2d Cir. 2001).

#### The Second Element Cannot Be Met

The second element requires that the conduct be done with intent to influence or disturb members of the public, or with recklessness to such a risk. In this case: The conduct occurred in Courtroom 302. No members of the public were present in the courtroom at the time of the incident. A courtroom is not considered a "public place" under the disorderly conduct statute if it is closed to the public or if no members of the public are present. Without any members of the public present, it is unreasonable to conclude that Plaintiff Etan Leibovitz acted with the intent to inconvenience, annoy, or alarm the public. The absence of an audience eliminates the statutory basis for this element.

### V. QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS

See Supra

## VI.  CONCLUSION

For the reasons set forth above, Plaintiff Etan Leibovitz respectfully request that the State Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) be denied.

Respectfully submitted this 6th day of January 2025.

    S/ Etan Leibovitz

Etan Leibovitz, Pro Se
83-19 141st Street
Briarwood, NY 11435
(917) 774-1455