UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
        :
**ETAN LEIBOVITZ**,
        :

                 Plaintiff,        :

        :   **MEMORANDUM AND ORDER**

           – against –        :   24-CV-4779 (AMD) (LB)

        :
**NEW YORK ASSISTANT ATTORNEY
GENERAL NICOLE PROCIDA, NEW YORK  :
STATE COURT OFFICERS MICHAEL
ZEBRO AND KENNETH COY, NEW YORK :
SRT COURT OFFICERS JOHN DOES 1–10,
QUEENS ASSISTANT DISTRICT ATTORNEY :
PHYLLIS WEISS, AND NEW YORK STATE
COURT JUDGE JOHN KATSANOS,**     :

                 Defendants.    :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* plaintiff brings this action alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as New York state constitutional, statutory, and common law claims. Before the Court are the defendants' motions to dismiss those claims pursuant to Federal Rules Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the defendants' motions are granted.

## BACKGROUND[1]

### I. Factual Background

      In 2012, the plaintiff brought a contract action against his former business partners in Queens County Supreme Court. (ECF No. 1 ¶ 39.) On January 7, 2015, the plaintiff's case was transferred to Queens Civil Court, where it was ultimately assigned to Judge John Katsanos. (*Id.*

---

[1] The plaintiff's 97-page complaint includes detailed descriptions of his state court disputes. The Court includes only the allegations necessary to explain its decision.

¶¶ 57, 106.) Judge Katsanos scheduled a bench trial for October 21, 2022. (*Id.* ¶ 122.) The plaintiff appeared on that date, and as was his habit, recorded the proceedings. (*Id.* ¶¶ 122, 125.) At one point, he asked Judge Katsanos whether he had "reviewed the complete docket;" Judge Katsanos replied that he "reviewed whatever [he] needed to review with regards to this matter." (*Id.* ¶ 125.) The plaintiff replied, "let the record reflect that the Judge has no clue what the fuck is going on." (*Id.*) At first, Judge Katsanos held the plaintiff in civil contempt of court for his "use of inappropriate language" and his "belligeren[ce] to the Court and others," but subsequently withdrew the civil contempt charge, and rescheduled the bench trial for November 15, 2022. (*Id.* ¶ 127.)[2]

During the November 15, 2022 bench trial, Judge Katsanos rejected the plaintiff's request to admit a CD into the record. (*Id.* ¶¶ 156–57.) The plaintiff claims that he then "dropped the CD into the well, close to the plaintiff's table" and left the courtroom. (*Id.* ¶ 167.) Judge Katsanos described the incident differently on the record: "Let the record reflect that an object was thrown at the judge." (*Id.* ¶ 168.)[3] Court officers Coy, Michael Zebro, and "7–10 unidentified John Doe Court Officers" ("Doe Officers") then arrested and handcuffed the plaintiff, and took him to a holding cell, where he claims that two of the Doe officers threatened him. (*Id.* ¶¶ 171–73, 178–79.)[4]

An hour and half later, the court officers removed the plaintiff from the cell, handcuffed him, shackled his legs, placed a "black polyester mask" over his head, and applied "excessive

---

[2] The plaintiff also asked court officer Kenneth Coy to arrest Judge Katsanos for "violating his 5th Amendment right." (*Id.* ¶ 126.) The plaintiff asserts that court officer Coy "refused to acknowledge what had just happened in court." (*Id.*)

[3] The plaintiff disputes this characterization. (*Id.* ¶ 169.)

[4] According to the plaintiff, a Doe officer told him he should "cooperate . . . or else we are going to come in and this is going to get rough." (*Id.* ¶ 178.) Another Doe officer said, "you are going to have major fucking problems . . . I am treating you like I am treating a fucking murderer." (*Id.* ¶ 179)

2

force." (*Id.* ¶¶ 180–81.) During the drive to the 102nd Police Precinct, the plaintiff "experienced severe pain as a result of the excessive force . . . and the handcuff." (*Id.* ¶¶ 182–86.) The next morning, the plaintiff was arraigned at the Queens Criminal Court, and charged with obstructing governmental administration in the second degree, in violation of N.Y. Penal Law § 195.05; resisting arrest, in violation of N.Y. Penal Law § 205.30; criminal contempt in the second degree, in violation of N.Y. Penal Law § 215.50-1; attempted assault in the third degree, in violation of N.Y. Penal Law §§ 110, 120.00-1; and harassment in the second degree, in violation of N.Y. Penal Law § 240.26-1. (*Id.* ¶¶ 7, 213.)[5]

The court released the plaintiff on his own recognizance and the case was adjourned to January 25, 2023. (*Id.* ¶ 213.) On that date, Queens County Assistant District Attorney Phyllis Weiss offered to dispose of the case with an adjournment in contemplation of dismissal. (*Id.* ¶ 221.) The plaintiff rejected the offer and asked ADA Weiss to investigate his arrest. (*Id.*) In a February 15, 2023 email, the plaintiff again demanded that ADA Weiss investigate his arrest, stating that he would "sue[] [her] in [her] investigative capacity" if she did not comply. (*Id.* ¶ 225.) On February 17, 2023, the court granted ADA Weiss's motion to dismiss the criminal case. (*Id.* ¶ 227.)

On July 11, 2023, the plaintiff sued the State of New York in the New York State Court of Claims. (*Id.* ¶ 229.) The plaintiff raised eight state law claims in connection with the events of November 15, 2022: false arrest, malicious prosecution, assault and battery, failure to intervene, negligence, abuse of process and unlawful seizure in violation of the New York State Constitution, Article 1, Section 12. (*Id.*; ECF No. 24-3 at 34–42.) Assistant Attorney General

---

[5] The plaintiff alleges that court officer Coy signed the criminal complaint and that Judge Katsanos signed a "supporting deposition," both of which were perjured. (*Id.* ¶¶ 6, 8, 339.)

Nicole Procida moved to dismiss the complaint. (ECF No. 1 ¶ 248.)[6] On December 13, 2023, the Court of Claims granted the motion and dismissed the case. (*Id.* ¶ 298; ECF No. 24-5.)

## II. Procedural Background

On July 9, 2024, the plaintiff brought this civil rights action against Judge Katsanos, Assistant Attorney General Procida, court officers Zebro and Coy (the "State Defendants"), Doe Officers 1–10, and Assistant District Attorney Weiss. (ECF No. 1.) The plaintiff asserts multiple claims against the defendants, in their official and unofficial capacities:

1. Violations of 18 U.S.C. § 1983 against Procida for deprivation of free speech and expression under the First Amendment (Count I), against Judge Katsanos, Coy and Zebro for false imprisonment and false arrest under the Fourth Amendment (Count IV),[7] against Judge Katsanos, Coy, Zebro, and Weiss for denial of due process and malicious prosecution under the Fourth and Fifth Amendments (Count V), against Doe Officers 3–10 for failure to intervene under the Fourth Amendment (Count XI), and against Coy, Zebro, and Doe Officers 1–10 for excessive force under the Fourth Amendment (XIII);

2. Violations of New York State Constitution, against Procida for deprivation of free speech and expression under Article I § 8 (Count II), and against Judge Katsanos, Coy and Zebro for unreasonable search and seizure and denial of due process under Article I §§ 6 and 12 (Count VIII);

3. Violation of N.Y. Judiciary Law § 487 against Procida (Count III); and

4. Violations of New York tort law:

    a. Malicious prosecution against Judge Katsanos, Coy, Zebro, and Weiss (Count VI);

    b. Assault and battery against Judge Katsanos, Coy, and Zebro (Count VII) and against Doe Officers 1 and 2 (Count XII);

---

[6] The plaintiff alleges that Procida "blocked" his number, preventing him from calling the Office of the Attorney General. (ECF No. 1 ¶¶ 250.) He did, however contact Procida by email multiple times, as detailed in the complaint. (*E.g., id.* ¶¶ 250, 252, 256, 260, 262, 267.)

[7] Under New York law, the torts of false arrest and false imprisonment are "synonymous." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). Further, a Section 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). For purposes of this decision, the Court refers only to the plaintiff's false imprisonment claim.

  c. False imprisonment against Judge Katsanos, Coy, and Zebro (Count IX); and

  d. Malicious prosecution against Judge Katsanos, Coy and Zebro (Count X).

(ECF No. 1 ¶¶ 315–422.)

  On August 30, 2024, the State Defendants moved to dismiss the plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 23.) They argue that the plaintiff's claims are barred by the Eleventh Amendment, *res judicata* or collateral estoppel, and judicial and quasi-judicial immunity. (ECF No. 25 at 12–13). To the extent any claims survive those arguments, the State Defendants argue, the plaintiff fails to state a claim or, alternatively, that they are entitled to qualified immunity. (*Id.*)

  On December 11, 2024, Weiss moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 41). She argues that the claims against her are barred by prosecutorial immunity, collateral estoppel, and that the plaintiff's due process claim is duplicative of his malicious prosecution claims. (ECF No. 43 at 6.)

## LEGAL STANDARD

  Under Federal Rule of Civil Procedure 12(b)(1), a "case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept all material factual allegations in the complaint as true, but should not draw inferences favorable to the plaintiff." *Islam v. Barr*, 394 F. Supp. 3d 279, 284 (E.D.N.Y. 2019). The party asserting subject matter jurisdiction carries "the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

  Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6)

5

challenge, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although a plaintiff need not set forth "detailed factual allegations," a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court deciding a Rule 12(b)(6) motion "accept[s] all factual allegations in the complaint as true and draw[s] all inferences in the plaintiff's favor." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

The Court "liberally construe[s]" *pro se* filings and evaluates them by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020). The plaintiff's claims must be "read . . . 'to raise the strongest arguments that they suggest.'" *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)). However, a *pro se* plaintiff who has an "extensive litigation history," as this plaintiff does, is entitled to "less deference." *In re Lynch*, No. 19-2965, 2022 WL 16467, at *2 (2d Cir. Jan. 3, 2022) (citing *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)).[8]

---

[8] The plaintiff has extensive experience litigating in the Eastern and Southern Districts of New York. *E.g.*, *Leibovitz v. City of New York*, No. 15-CV-546, 2019 WL 4307305 (S.D.N.Y. Aug. 27, 2019), *report and recommendation adopted*, No. 15-CV-546, 2019 WL 4303343 (S.D.N.Y. Sept. 11, 2019); *Leibovitz v. City of New York*, No. 14-CV-3297, 2017 WL 1314122 (S.D.N.Y. Apr. 6, 2017), *report and recommendation adopted*, No. 14-CV-3297, 2017 WL 3433608 (S.D.N.Y. Aug. 10, 2017); *Leibovitz v. Barry*, No. 15-CV-1722, 2016 WL 5107064 (E.D.N.Y. Sept. 20, 2016). In *Leibovitz v. Barry*, Judge Kiyo Matsumoto dismissed similar constitutional and state law claims based on the Eleventh Amendment, *Younger* abstention, and for failure to state a claim. 2016 WL 5107064, at *5–15.

# DISCUSSION

**I.**     **Eleventh Amendment**

The Court must dismiss the plaintiff's claims against the defendants in their official capacities because they have sovereign immunity.  The Eleventh Amendment "bars a federal court from hearing suits at law or in equity against a State brought by citizens of that State or another." *T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71, 91 (2d Cir. 2024) (quoting *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020)).  "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation and internal quotation mark omitted).  New York has not waived its Eleventh Amendment immunity, and Congress did not abrogate the state's immunity in enacting Section 1983.  *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38, 40 (2d Cir. 1977).  Indeed, courts routinely dismiss claims against New York judges, court officers, assistant attorneys general, and district attorneys on Eleventh Amendment grounds. *E.g.*, *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (state court judges); *Walden v. Cuomo*, No. 19-CV-6779, 2019 WL 4640011, at *2 (S.D.N.Y. Sept. 24, 2019) (assistant attorneys general); *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (district attorneys); *Leibovitz v. Barry*, No. 15-CV-1722, 2016 WL 5107064, at *5–6 (E.D.N.Y. Sept. 20, 2016) (state court officers).

The plaintiff concedes that the Eleventh Amendment bars his claims against Judge Katsanos, Coy, and Zebro (ECF No. 56 at 5), but says nothing about Procida, Weiss, or the Doe

Officers. In any event, the law on this point is clear, and the plaintiff's claims against the State Defendants in their official capacities are dismissed on sovereign immunity grounds.[9]

## II. *Res Judicata*

The doctrine of *res judicata* provides that "a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand." *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001) (internal citation omitted). "When determining the effect of a state court judgment, federal courts are required to apply the preclusion law of the rendering state." *Harris v. Beth Israel Med. Ctr.*, 367 F. App'x 184, 185 (2d Cir. 2010) (cleaned up). In New York, *res judicata* "'bars successive litigation based upon the same transaction or series of connected transactions' if (1) 'there is a judgment on the merits rendered by a court of competent jurisdiction;' and (2) 'the party against whom the doctrine is invoked was a party to the previous action.'" *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, No. 23-765, 2024 WL 2104604, at *2 (2d Cir. May 10, 2024) (quoting *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008)). "Under New York's transactional approach to *res judicata*, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (cleaned up). "The party asserting *res judicata* bears the burden of proving these elements." *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 (E.D.N.Y. 2010).

---

[9] *Ex Parte Young*, which permits a plaintiff to seek prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law, *Green v. Mansour*, 474 U.S. 64, 68 (1985), does not apply here. The only equitable relief the plaintiff seeks is that Procida stop "blocking" his calls to the Office of the Attorney General. (ECF No. 1 at 95.) However, as explained below, blocking a litigant's phone number, standing alone, does not violate the First Amendment.

8

In his suit against the State of New York in the New York Court of Claims, the plaintiff alleged the same facts about the November 15, 2022 events that he alleges in this case, and raised eight state law claims: false arrest, malicious prosecution, assault and battery, failure to intervene, negligence, abuse of process, and unlawful seizure in violation of the New York State Constitution, Article 1 § 12. (ECF No. 1 ¶ 229; ECF No. 24-3 at 34–42.) Judge Javier E. Vargas granted the defendants' motion to dismiss, because the plaintiff "failed to preserve [his] right to file a Claim" and in any event, failed to state a claim. (ECF No. 24-5 at 8–14.)

There is no question that Judge Vargas's order dismissing the plaintiff's state law complaint is a final judgment, *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) ("[T]he dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects."); *Saferstein v. Laws.' Fund for Client Prot.*, 223 F. App'x 39, 40 (2d Cir. 2007) (holding that dismissal on statute of limitations grounds is a final judgment for *res judicata* purposes), or that the New York Court of Claims is a court of competent jurisdiction. Additionally, there is privity among at least some of the defendants in each suit. "The general rule of privity for purposes of *res judicata* is that one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the action." *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 217 (S.D.N.Y. 2010) (cleaned up); *see also Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) ("It is well settled in this circuit that literal privity is not a requirement for *res judicata* to apply."). While the plaintiff sued only the State of New York in the Court of Claims, he identified Judge Katsanos, Coy, Zebro, and the Doe Officers in that complaint. (*See generally* ECF No. 24-3.) At a minimum, the State of New York "adequately

represented" their interests, and as their employer, was "vested with the authority of representation." *Faiveley Transp.*, 758 F. Supp. 2d at 217.

Under these circumstances, *res judicata* bars the state tort and constitutional claims against Judge Katsanos, Coy, Zebro, and the Doe Officers in Counts VI, VII, VIII,[10] IX, X, and XII, which the plaintiff brought in the state court action, and which concern the same events.

### III. Collateral Estoppel

The related doctrine of collateral estoppel precludes claims and issues that a plaintiff previously raised and that a court resolved. *See CBF Indústria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 241 (S.D.N.Y. 2023). "Collateral estoppel bars re-litigation of an issue where '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 270 (S.D.N.Y. 2012) (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)). However, the parties in the prior proceeding do not have to be the same as those in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03-CV-6450, 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action."), *report and recommendation adopted sub nom.*, *Amadasu v. Rosenberg*, No. 03-CV-6450, 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005),

---

[10] Count VIII alleges two New York state constitutional violations: an unreasonable seizure, in violation of Article I § 12, and a deprivation of due process in violation of Article I § 6. (ECF No. 1 ¶¶ 384–88.) Because the plaintiff's state court complaint brought only a claim of unreasonable seizure, *res judicata* arguably applies only to that claim. However, as explained below, the due process claim is barred by collateral estoppel.

10

*aff'd*, 225 F. App'x 32 (2d Cir. 2007). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168–69 (E.D.N.Y. 2010) (quoting *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991)), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).

"Federal courts must give a state court judgment the same preclusive effect as would be given it under the law of the state in which the judgment was rendered." *Weston v. First Union Nat. Bank*, 201 F.3d 434 (2d Cir. 1999) (citations omitted) (unpublished table decision). For that reason, collateral estoppel "may bar a plaintiff from bringing an action in federal court pursuant to § 1983, if the plaintiff would be precluded from litigating his claim in a New York State court." *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012) (cleaned up); *see also Casler v. W. Irondequoit Sch. Dist.*, 563 F. Supp. 3d 60, 66 (W.D.N.Y. 2021); *Marentette v. City of Canandaigua*, 351 F. Supp. 3d 410, 418 (W.D.N.Y. 2019); *Franza v. Stanford*, No. 16-CV-7635, 2019 WL 452053, at *4 (S.D.N.Y. Feb. 5, 2019).

As explained above, the issues before the New York Court of Claims — which the plaintiff plainly had an opportunity to litigate and did litigate — are identical to the issues in the following claims in the federal complaint: false imprisonment (Count IV); malicious prosecution (Count V); denial of due process (Counts V and VIII); failure to intervene (Count XI);[11] and

---

[11] The plaintiff did not raise a failure to intervene claim in the state court complaint, but the claim is based on the Doe Officers' alleged "fail[ure] to intervene on the Plaintiff Etan Leibovitz's behalf in order to prevent the violation of his rights . . . by Defendants John Does #1-2." (ECF No. 1 ¶ 405.) However, Judge Vargas held that Doe Officers 1 and 2 did not commit assault and battery. There cannot be a failure to intervene where there is no underlying constitutional violation. *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) ("[A] failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim."). Accordingly,

11

excessive force (Count XIII). Accordingly, collateral estoppel bars the plaintiff from relitigating Counts IV, V, XI and XIII.

## IV. Immunity

Even if the claims against Judge Katsanos and Weiss were not barred by the Eleventh Amendment, collateral estoppel, and *res judicata*, they would be entitled to absolute immunity.[12]

### a. Judicial Immunity

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions," and "even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). There are only two circumstances in which judicial immunity does not apply: (1) "for nonjudicial actions" and (2) for actions "taken in the complete absence of all jurisdiction." *Thomas*, 857 F. App'x at 37 (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam)). "[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature," *Bliven*, 579 F.3d at 210, and judges "have substantial power to maintain the decorum and security of their courtrooms and the courthouses in which those courtrooms are located," *Huminski v. Corsones*, 396 F.3d 53, 77–78 (2d Cir. 2005).

When "a judge reasonably perceives a threat to himself or herself arising out of the judge's adjudicatory conduct, the judge's response, be it a letter to a prosecutor or a call to the

---

collateral estoppel bars the plaintiff from bringing a failure to intervene claim based on the same conduct.

[12] The State Defendants argue that Coy and Zebro are entitled to quasi-judicial immunity. However, the Second Circuit has not decided whether court officers are entitled to quasi-judicial immunity, and there is a circuit split on the issue. *Compare Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997), *with Russell v. Richardson*, 905 F.3d 239, 248-51 (3d Cir. 2018), *Brooks v. Clark County*, 828 F.3d 910, 917–19 (9th Cir. 2016), *Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001), and *Martin v. Bd. of Cnty. Comm'rs*, 909 F.2d 402, 405 (10th Cir. 1990). The Court does not address the question because it dismisses the claims against the court officers on other grounds.

12

Marshall's office for security, is a judicial act within the scope of judicial immunity." *Id.* at 78 (quoting *Barrett v. Harrington*, 130 F.3d 246, 259 (6th Cir. 1997)); *see also Jacobs v. Ali*, No. 18-CV-2909, 2021 WL 12147769, at *5 (E.D.N.Y. June 22, 2021) ("A judge's decision to exclude a person from her courtroom due to disruption or breach of decorum is a judicial act."); *Buhannic v. Friedman*, No. 18-CV-5729, 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) ("To the extent Plaintiff's § 1983 claim is premised on [a judge's] conduct at hearings and conferences, such conduct also constitutes judicial action."); *Glavin v. Restaino*, 210 F. App'x 122, 124 (2d Cir. 2006) ("[T]he judge here was not acting in clear absence of jurisdiction when he punished plaintiffs for the courtroom disturbances by . . . detaining them.").

The plaintiff's claims against Judge Katsanos are based entirely on the judge's response to the plaintiff's behavior at the October 21 and November 15, 2022 hearings. The plaintiff alleges, in essence, that Judge Katsanos violated the Constitution when he held the plaintiff in contempt, rejected his proffered evidence, and signed a "supporting deposition" in connection with the criminal complaint. (ECF No. 1 ¶¶ 337–401 (Counts IV–X).)[13] The judge's actions were judicial functions, and well within his authority to "maintain the decorum and security" of his courtroom. *Huminski*, 396 F.3d at 77. Accordingly, Judge Katsanos is entitled to immunity for claims against him in his individual capacity.

 b. **Prosecutorial Immunity**

"Prosecutors are absolutely immune from liability in § 1983 suits brought against prosecutorial actions that are 'intimately associated with the judicial phase of the criminal

---

[13] Judge Katsanos signed a supporting deposition in the criminal case against the plaintiff, a case that "ar[ose] out of, or [was] related to, [an] individual case[] before" the judge. *Bliven*, 579 F.3d at 210. Even if signing a supporting deposition was not a judicial function, the plaintiff's claims about that conduct are barred by the Eleventh Amendment, *res judicata* and collateral estoppel.

13

process.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 335 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 428, 430 (1976)); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 69 (2d Cir. 2019) ("Absolute immunity bars § 1983 suits against prosecutors for their role 'in initiating a prosecution and in presenting the State's case.'" (citation omitted)). Courts determining whether a prosecutor is entitled to absolute immunity apply a "functional approach;" the "Supreme Court has explained that a prosecutor's functions . . . include whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (citations and internal quotation marks omitted); *see also Kuar v. Mawn*, No. 08-CV-4401, 2011 WL 838911, at *5 (E.D.N.Y. Mar. 4, 2011) ("[B]oth the Supreme Court and Second Circuit have made clear that the decision regarding whether or not to initiate prosecution is a quintessential prosecutorial function that is entitled to absolute immunity." (collecting cases)).

The plaintiff's claims against Weiss are based on the "initiation and continuation of [his] criminal prosecution," (ECF No. 1 ¶ 358 (Count V); *see also id.* ¶¶ 372–73 (Count VI)), which are "quintessential" prosecutorial functions that are "entitled to absolute immunity." *Kuar*, 2011 WL 838911, at *5.

## V. Failure to State a Claim

The only remaining causes of action are the plaintiff's free speech and New York Judiciary Law § 487 claims against Procida (Counts I, II, and III). Because the plaintiff did not substantively respond to Procida's arguments for dismissal of these claims (*see* ECF No. 56 at 9), the plaintiff can rightly be seen as having abandoned them, *Sealy*, 408 F. Supp. 3d at 225, *aff'd*, 834 F. App'x 611. In any event, even if these claims were not abandoned, they must also be dismissed.

14

a. **Free Speech Claims (Counts I and II)**

A plaintiff claiming a First Amendment violation under Section 1983 "must demonstrate that his conduct is deserving of first amendment protection." *Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991) (quoting *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987)). To determine whether the First Amendment protects particular speech, courts must first "examine the nature of the forum in which the speaker's speech is restricted." *Huminski*, 396 F.3d at 89. "In a nonpublic forum, the government has maximum control over communicative behavior, and a government restriction on speech in a nonpublic forum will be upheld so long as the restriction is reasonable and viewpoint-neutral." *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (citations and internal quotation marks omitted); *see also Washpon v. Parr*, 561 F. Supp. 2d 394, 408–09 (S.D.N.Y. 2008) ("Inside a non-public forum, governmental restrictions on expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and are not an effort to suppress expression merely because public officials oppose the speaker's view." (citation and internal quotation marks omitted)). The reasonableness of a restriction "must be assessed in the light of the purpose of the forum and all the surrounding circumstances." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 809 (1985).

The plaintiff asserts that Procida violated his right to free speech under the First Amendment and New York State Constitution, Article 1 § 8 by "blocking [his] cell phone number from incoming calls." (ECF No. 1 ¶¶ 317, 322.) "[F]ree speech claims under Article 1, Section 8 of the New York State Constitution are subject to the same analysis as free speech claims under the First Amendment." *Carter v. Inc. Vill. of Ocean Beach*, 693 F. Supp. 2d 203, 212 (E.D.N.Y. 2010), *aff'd*, 415 F. App'x 290 (2d Cir. 2011); *see also Martinez v. Sanders*, 307

F. App'x 467, 468 n.2 (2d Cir. 2008) (observing that claims arising under First Amendment of the United States Constitution and under Article I, Section 8 of the New York State Constitution are "subject to the same standards").

Neither the Office of the Attorney General or Procida's phone line at that office are public forums. *See United States v. Grace*, 461 U.S. 171, 177 (1983) ("Publicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will."); *Omor v. City of New York*, No. 13-CV-2439, 2015 WL 857587, at *5 (S.D.N.Y. Feb. 27, 2015) ("While the HRA office is a local government office open to the public, it is not a public forum 'that has as a principal purpose [of] . . . the free exchange of ideas.'" (quoting *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679–80 (1992))); *see also Leibovitz*, 2015 WL 13746665, at *7 (finding that a phone line in a judge's chambers is a nonpublic forum), *report and recommendation adopted*, 2016 WL 1189526. Accordingly, blocking the plaintiff's phone calls was not a First Amendment violation. An assistant attorney general is not required to field calls from litigants, especially if the calls are frequent or harassing in nature. In any event, the plaintiff was undeterred; he concedes that he bypassed the caller identification system by dialing "*67," and that he emailed Procida repeatedly. (ECF No. 1 ¶¶ 236, 238–41, 243, 245–46, 250, 252, 254, 256, 260, 262, 267.)[14] Accordingly, the plaintiff fails to state a cognizable free speech claim under the First Amendment or Article I § 8 of the New York State Constitution.

---

[14] Although the plaintiff does not specify how many times he called Procida, it is clear from the complaint that he did so frequently. (ECF No. 1 ¶ 254.) He also emailed her multiple times. For example, between August 7 and August 28, 2023, he emailed Procida 14 times — sometimes within minutes of earlier emails. (*Id.* ¶¶ 236, 238–41, 243, 245–46, 250, 252, 256, 260, 262, 267.) In some of the emails, the plaintiff threatened to move for sanctions or file suit if Procida did not answer him by a certain time or unblock his number. (*Id.* ¶¶ 240–41, 250, 256, 267.)

### b. Judiciary Law § 487 (Count III)

New York Judiciary Law § 487 provides that an attorney who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is civilly liable to the injured party. N.Y. Jud. Law § 487; *see also Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 407 (S.D.N.Y. 2000) ("Section 487 provides that an attorney who engages in deceit or collusion upon either the court or a party is guilty of a misdemeanor and is liable to the injured party in treble damages to be recovered in a civil action."). To state a Section 487 claim, a plaintiff must plead "actual deceit by the attorney and causation, that is, that the deceit or collusion actually caused plaintiff's damages." *Schweizer*, 93 F. Supp. 2d at 408 (citations omitted); *see also Maroulis v. Friedman*, 153 A.D.3d 1250, 1252 (2d Dep't 2017) ("[T]o state a cause of action alleging a violation of Judiciary Law § 487, the plaintiff must plead allegations from which damages attributable to the defendants' conduct might be reasonably inferred." (citation and internal quotation marks omitted)). "Allegations regarding an act of deceit or intent to deceive must be stated with particularity." *Langton v. Sussman & Watkins*, No. 2021-1714, 2025 WL 1318266, at *3 (2d Dep't May 7, 2025) (quoting *Guliyev v. Banilov & Assocs., P.C.*, 221 A.D.3d 589, 591 (2d Dep't 2023)).

The plaintiff alleges that Procida "engaged in deceit during the course of the underlying Court of Claims [] action" by paraphrasing a statement Judge Katsanos made during the November 15, 2022 hearing. (ECF No. 1 ¶¶ 328, 330–33.) The plaintiff also says that Procida "intentionally failed to apprise the Court of Claims" of certain facts, including that she did not "investigate" his arrest and that Judge Katsanos "committed perjury" in his statement supporting that arrest. (*Id.* ¶ 334.)

17

As an initial matter, the complaint does not "state[] with particularity" that Procida actually intended to deceive the court. *Langton*, 2025 WL 1318266, at \*3 (citation omitted); *see also Guliyev*, 221 A.D.3d at 591 (affirming dismissal of Section 487 claim where "the plaintiff's allegations that the defendants hid true facts and acted to benefit themselves [were] conclusory and factually insufficient"); *Bryant v. Monaghan*, No. 15-CV-8427, 2016 WL 11272143, at \*13 (S.D.N.Y. Dec. 16, 2016) ("The mere fact that an allegation may be incorrect does not imply that the attorney who made the allegation acted with an intent to deceive or defraud."), *report and recommendation adopted sub nom.*, *Bryant v. Silverman*, No. 15-CV-8427, 2017 WL 887043 (S.D.N.Y. Mar. 6, 2017). Regardless, a lawyer is not "deceitful" merely because she declines to adopt her opponent's claims about a case, which is essentially what the plaintiff argues. Accordingly, the plaintiff's Section 487 claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, the defendants' motions are granted. The plaintiff's claims against the defendants in their official capacities are barred by the Eleventh Amendment and are dismissed without prejudice. *Karupaiyan v. New York*, No. 23-1257-CV, 2024 WL 2174272, at \*2 (2d Cir. May 15, 2024) (finding that claims dismissed on Eleventh Amendment grounds should be dismissed without prejudice). The plaintiff's federal and state claims against Judge Katsanos, Coy, Zebro, Weiss, and the Doe Officers are dismissed with prejudice under the doctrines of *res judicata*, collateral estoppel, and judicial and prosecutorial immunity (Counts IV–XIII). Finally, the plaintiff's free speech and Judiciary Law claims against Procida are dismissed with prejudice for failure to state a claim (Counts I, II, and III).

Generally, a *pro se* plaintiff should be given an opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility,

however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  In this case, however, the Court already gave the plaintiff an opportunity, at his request, to amend his complaint and granted him multiple extensions of time to do so.  (*See ECF Orders dated Sept. 27, 2024*, *Oct. 30, 2024*, *and Nov. 14, 2024*.)  The plaintiff did not file an amended complaint.  Moreover, the "problem with [the plaintiff's] causes of action is substantive" and "[r]epleading would thus be futile."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, leave to replead the complaint is denied, and the complaint is dismissed.

The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to plaintiff, note service on the docket, and close this case.

**SO ORDERED.**

s/Ann M. Donnelly<br>
ANN M. DONNELLY<br>
United States District Judge

Dated: Brooklyn, New York
      June 17, 2025